UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

LUIS VELEZ,                                    **NOT FOR PUBLICATION**

                          Petitioner,          **MEMORANDUM & ORDER**
                                                    10-CV-3402 (PKC)
                v.

WILLIAM LEE, Superintendent, Clinton
Correctional Facility,[1]

                          Respondent.
----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

    Petitioner Luis Velez ("Petitioner"), appearing *pro se*, seeks a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence entered on December 8,

2003, in the Supreme Court of the State of New York, Kings County.  Following a jury trial,

Petitioner was convicted of one count of Intentional Murder in the Second Degree for a shooting

that occurred in 1986.  He was sentenced to 25 years to life.

    Petitioner challenges his conviction on two grounds: (1) delay of prosecution, because he

was indicted 15 years after the incident in question; and (2) ineffective assistance of counsel,

because his attorney failed to assert a speedy trial violation and failed to secure documents that

---

[1] Although Petitioner named Steve Reccette as the Superintendent of Clinton Correctional
Facility in his 2014 Amended Petition (Dkt. 12), William Lee, Superintendent, has appeared as the
Respondent.  Thus, pursuant to Federal Rule of Civil Procedure ("FRCP") 25(d), the Court
automatically substitutes William Lee as the sole Respondent.

1

would have proved the speedy trial violation.[2]  For the reasons set forth below, the petition for a writ of *habeas corpus* is denied.

## BACKGROUND

### I. FACTS

Viewing the facts presented at trial in the light most favorable to the prosecution, *United States v. Riggi*, 541 F.3d 94, 96 (2d Cir. 2008), a reasonable juror could have found the following:

Shortly after midnight on February 23, 1986, Petitioner Luis "Lucho" Velez confronted Charles Moore at the S&M Athletic and Social Club (the "Club") in Crown Heights, Brooklyn, because Moore was dancing with Petitioner's ex-girlfriend, Romento "Pat" Gardner.  (Trial Transcript ("T."), Dkt. 11-2, 183–84.)  After telling Moore, "[D]on't be dancing with my girlfriend," Petitioner left to order a drink at the bar.  (T. 185.)  A few moments later, Petitioner returned to the dance floor and confronted Moore again, and thereafter returned again to the bar.  (T. 185–87.)  Petitioner then returned to the dance floor a third time, shot Moore, and then walked

---

[2] Petitioner's Amended Petition only discusses counsel's failure to secure documents. (Dkt. 12 at ECF 8.)  However, the Court liberally construes his amended petition as encompassing all claims raised in his initial Petition, which stated that it was brought "on the same grounds . . . submitted in the state court."  (Dkt. 1 at ECF 3.)  Because Petitioner asserted on direct appeal that his counsel was ineffective for failing to *argue* the speedy trial violation below, *Id.* at 2–3, the Court addresses both claims.

Citations to "ECF" refer to the page numbering of the Electronic Court Filing ("ECF") system, and not the document's internal pagination.

2

out of the Club.  (T. 185-88, 241-42, 403.)  Moore died at the scene from his wounds, the bullet having lacerated his intestines and aorta.  (T. 271.)

### A.  The Investigation

Detective Stephen Fitzpatrick, the lead investigator, spoke with at least six witnesses, including bartender Brenda Phillips (née Brown), security guard Ernest Mingo, and club patron Larry White.  (T. 348, 354–55.)   After interviewing the witnesses, police identified Petitioner as the prime suspect in their investigation of the murder.  (T. 354.)   After attempting unsuccessfully to locate Petitioner, Fitzpatrick issued a "wanted card" for him, which meant that Fitzpatrick would be notified if Petitioner was arrested anywhere in New York City.  (T. 234–35, 355–57.)  At some point before 2001, that wanted card expired.  (*Id.*; T. 361.)

Petitioner fled New York after the shooting, and traveled to South Carolina, Maryland, and the District of Columbia.  (T. 461–64.)  During that time, Petitioner used his "Melvin Rhymer" alias, as well as another alias, "Luis A. Samaniego."  (T. 461–64.)  In Washington, D.C., Petitioner applied for a passport using the name "Andre Samuel Stroman," purportedly from Baltimore, Maryland.  (T. 461–62.)  During this period, he was arrested and incarcerated multiple times on separate unrelated charges (including a drug-related offense and passport fraud).[3]   Upon his

---

[3] It is not clear whether evidence of these other offenses was introduced at Petitioner's trial, although they were discussed outside the presence of the jury.  (T. 4–10.)

release, he eventually returned to New York, where in 1997 he was again arrested on unrelated charges, although, as noted, by then the wanted card had expired.  (T. 234–35.)[4]

By 2001, the Moore shooting had been referred to a cold case squad, and assigned to New York Police Detectives Thomas Lohmann and Daniel D'Alessandro.  (T. 93–96.)   Detective Lohmann issued a second wanted card for Petitioner in July 2001.  (T. 234.)  On June 12, 2002, D'Alessandro and Lohmann became aware that Petitioner was in New York State custody on an unrelated charge.  (T. 101.)   Detective D'Alessandro took custody of Petitioner that evening and read him his Miranda warnings, which Petitioner waived in writing.  (T. 103, 115–18.)  Petitioner then agreed to answer questions, and made written, videotaped, and oral statements admitting that he was at the Club when Moore was shot.  (T. 118–20.)  These statements were made in the presence of Assistant District Attorney Alfred DeIngeniis. (T. 131–32.)  After learning that he would receive a life sentence if convicted of Moore's murder, Petitioner told D'Alessandro that he would "take fifteen years for murder right now."  (T. 145.)

On July 10, 2002, Petitioner was indicted for his involvement in the Moore shooting and charged with intentional murder, depraved indifference murder, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree.  (Dkt. 12 at ECF 40.)

**B.  Trial, Verdict and Sentencing**

At Petitioner's trial, which began on November 5, 2003, the prosecution presented the testimony of Ernest Mingo, Larry White, Romento Gardner, and Brenda Phillips as eyewitnesses

---

[4] In fact, it appears that Petitioner was arrested multiple times in New York City between 1997 and 2001, although he was not apprehended for the Moore shooting until the new wanted card was issued.  (Dkt. 12 at ECF 42–50.)

to the events the night of the shooting.  Mingo, the doorman/security guard at the Club, testified
to seeing Petitioner enter the Club the night of the shooting.  (T. 54.)  He testified that he later
heard a pop, and saw a crowd running out of the Club, with more than one person saying, "Lucho
. . . shot somebody." [5]  (T. 55, 59.)  On June 12, 2002—16 years after the shooting—Mingo
identified Petitioner as "Lucho" in a police lineup.  (T. 75.)

White testified that he met with Petitioner on the night of the shooting at the Club.  (T.
240–41.)  He later heard two gunshots from the dance floor, and saw Petitioner emerge from the
crowd and put a "shiny" gun in his jacket.  (T. 241–44.)  White, too, later identified Petitioner in
a police lineup.  (T. 246.)

Gardner testified that she used to be in a romantic relationship with Petitioner, but ended it
after a year, when she learned that he was married.  (T. 176–77.)  She stated that Petitioner took
the breakup "hard", and that he "kept bothering" her.  (T. 177.)  She was with Moore on the dance
floor at the Club on February 22, 1986, when Petitioner confronted Moore and ultimately shot him.
(T. 184.)  Gardner testified that she saw Petitioner shoot Moore.  (T. 187.)  Gardner did not speak
with the police about this incident until 16 years later, when on June 13, 2002, she identified
Petitioner in a police lineup.  (T. 190.)

Phillips, who had been a bartender at the Club, also testified to seeing Petitioner pull out a
gun and shoot Moore on the dance floor.  (T. 414.)  The prosecution additionally presented the

---

[5] The state court admitted these third-party exclamations as excited utterances.  (T. 13–14, 59.)

testimony of an expert forensic pathologist, Detectives Fitzpatrick, D'Alessandro, and Lohman, Assistant District Attorney DeIngeniis, and Moore's sister.

At least twice during the trial, Petitioner expressed dissatisfaction with his court-appointed attorney, Joseph Ostrowsky, because Ostrowsky had advised against asking certain questions of witnesses to avoid opening the door to Petitioner's history of abusing Gardner and prior gun possession.  (T. 214–17; 419–35.)

During a discussion outside the presence of the jury, Petitioner stated his intention not to testify, despite his attorney's advice that he testify.  (T. 332.)  The state court notified Petitioner that once the jury was charged, he would not have the opportunity to change his mind.  (T. 332–33.)  Ultimately, Defendant did not testify.  Nor did the defense present any witnesses or evidence on his behalf.  Petitioner's counsel never argued that the 16-year pre-indictment delay violated his state or federal constitutional rights.

The jury found Petitioner guilty of one count of Intentional Murder in the Second Degree.  (Sentencing Transcript, Dkt. 11-2, at ECF 581.)  The Court later sentenced him to the maximum sentence of 25 years to life.  (*Id.*, at ECF 585.)

### C.  Direct Appeal

Petitioner appealed his conviction and sentence.  The brief filed by Petitioner's appellate counsel argued that (1) Petitioner's trial counsel was ineffective for not arguing that Petitioner's speedy trial right was violated by the 16-year delay in prosecuting him; and (2) the sentence was harsh and excessive.  (Dkt. 11-3, Exhibit B.)   In a *pro se* supplemental brief, Petitioner further argued that (1) the prosecution's loss of crucial photographic evidence prevented his trial counsel from adequately cross-examining a prosecution witness; (2) the evidence introduced at trial was

6

legally insufficient to support his conviction; and (3) the verdict was against the weight of the evidence. (Dkt. 11-3, Exhibit D.)

On March 17, 2009, the Appellate Division affirmed Petitioner's conviction in a brief opinion, summarily finding that "[c]ontrary to [Petitioner's] contention, he was not denied the effective assistance of counsel". *People v. Velez*, 874 N.Y.S.2d 382, 383 (N.Y. App. Div. 2009).[6]

Petitioner requested permission to appeal the denial to the Court of Appeals based on all of the same arguments, specifically asking for consideration of the question "whether a trial attorney's failure to argue that an extraordinary delay violated a defendant's constitutional rights to a speedy trial and prompt prosecution . . . amounts to ineffectiveness." (Dkt. 11-3, Exhibit F at 2.) The Court of Appeals denied Petitioner's motion for leave to appeal. *People v. Velez*, 909 N.E.2d 595 (N.Y. 2009). On December 21, 2016, the Appellate Division denied Plaintiff's application for a writ of error coram nobis to vacate the Court's March 17, 2009 Order. (Dkt. 15.)

### D. Exhaustion of State Remedies

Petitioner moved in Supreme Court, Kings County to vacate the judgment of his conviction pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10 ("Section 440.10 Motion"). (Dkt. 11-3, Exhibit H.) Petitioner raised two grounds for relief in his Section 440.10 Motion: (1) that the 16-year gap between the murder and indictment violated his federal and state due process rights, *i.e.*, right to a speedy trial; and (2) that he was denied effective assistance of counsel when his attorney failed to assert these due process violations and failed to obtain records from Maryland that would

---

[6] The Appellate Division also rejected Petitioner's other arguments, finding that the evidence was legally sufficient, that the verdict was not against the weight of the evidence, and that the sentence imposed was not excessive. *Id.* The court did not directly address Petitioner's argument about the loss of photographic evidence. *Id.*

have assisted him in proving his speedy trial claim.  (Dkt. 11-3, Exhibit H, at 9–20.)  On March 29, 2011, the Supreme Court denied Petitioner's Section 440.10 Motion, holding that his speedy trial rights had not been violated and that his ineffective assistance claims were procedurally barred for two reasons: (1) the Appellate Division had already found Petitioner's ineffective assistance claim to be meritless, thus barring this aspect of his claim under CPL § 440.10(2)(a); and (2) Petitioner could have raised any additional claims, presumably referring to Petitioner's argument about the Maryland records, on direct appeal, but failed to do so, thus barring this aspect of his claim under CPL § 440.10(2)(c).  (Dkt. 11-3, Exhibit J.)

In July, 2013, Petitioner appealed the denial to the Appellate Division, pursuant to CPL §§ 450.15 and 460.15.  (Dkt. 11 at 6; Dkt. 12 at 28.)  The Appellate Division denied the appeal on December 30, 2013.  (Dkt 11 at 6; Dkt. 12 at 28.)

Petitioner then sought leave from the Court of Appeals, which dismissed his application, because the order sought was not appealable under state law.  (Dkt. 11 at 6; Dkt. 12 at 28.)

### E.  Instant Petition

On July 15, 2010, Petitioner timely filed this Petition for a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254.  (Dkt. 1.)  In his petition, Petitioner requested a stay of proceedings so that he could return to state court and exhaust any remaining claims.  On September 24, 2010,

Judge Vitaliano granted his request and stayed the petition.[7]  On April 7, 2014, Petitioner filed a letter with the Court stating that he had exhausted his claims in state court.  (Dkt. 9.)

On August 19, 2014, Petitioner filed an amended *habeas* petition, raising two grounds for relief: (1) denial of his right to speedy trial, because the prosecution had "constructive knowledge" of his whereabouts during the 16-year period between the shooting and Petitioner's indictment for the shooting; and (2) ineffective assistance of counsel, because Petitioner's attorney failed to secure records proving the government's constructive knowledge of Petitioner's whereabouts. (Dkt. 12.)[8]

Having exhausted his state court remedies in compliance with this Court's Order to Show Cause, Petitioner requests that the Court now consider his petition for a writ of *habeas corpus*.

## DISCUSSION

### I.  STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), a federal district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a [s]tate court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); *see also Howard*

---

[7] This matter was reassigned to this Court on April 19, 2013.

[8] As noted, we also address Petitioner's claim that his counsel was ineffective for failing to argue the speedy trial violation below, even though this claim was only raised in Petitioner's original petition.  *See* note 1, *supra*.

*v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) ("A claim that a state conviction was obtained in

violation of state law is not cognizable in the federal court.").

      If petitioner's claim "was adjudicated on the merits in State court proceedings," the district

court may only grant the petition if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "'adjudication on the merits' is one that '(1) disposes of the claim on the

merits, and (2) reduces its disposition to judgment.'" *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir.

2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)). Review under § 2254(d)(1)

is "limited to the record that was before the state court that adjudicated the claim on the merits."

*Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

      A state court decision is "contrary to" clearly established federal law if "the state court

reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when

presented with 'facts that are materially indistinguishable from a relevant Supreme Court

precedent,'" the state court arrived at an opposite result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d

Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

      A state court decision is an "unreasonable application" of clearly established federal law if

"the state court identifies the correct governing legal principle from [Supreme Court] decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

The Court cautions, however, that "an *unreasonable* application of federal law is different from

an *incorrect* application of federal law." *Id.* at 410; *see also Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## II. PROCEDURAL DEFAULT

### A. Legal Standard

A federal court generally is precluded from reviewing a *habeas* claim if a state court's denial of the claim rested on an adequate and independent state law ground. *Lee v. Kemna*, 534 U.S. 362, 375 (2002); *see also Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment'" (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." *Lee*, 534 U.S. at 375 (citing *Coleman*, 501 U.S. at 729). "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Green*, 414 F.3d at 294; *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). A petitioner may, nevertheless, obtain federal *habeas* review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman*, 501 U.S. at 748–50). Furthermore, where the state court's decision appears to rest

11

primarily on federal law, or to be interwoven with federal law, there is a presumption against finding that federal review of the claim is barred.  *Coleman*, 501 U.S. at 739.

### B.  The Court Declines to Find Petitioner's Ineffective Assistance Claim Procedurally Barred

As noted above, on Petitioner's Section 440.10 motion, the Kings County Supreme Court denied Petitioner's speedy trial claim on the merits, and dismissed his ineffective assistance claim on procedural grounds: first, that CPL § 440.10(2)(a) barred his claim because the Appellate Division had already rejected his argument that trial counsel was ineffective for not asserting a speedy trial violation, and, second, that CPL § 440.10(2)(c) barred any new argument that could have been raised on direct appeal, such as Petitioner's argument about defense counsel's failure to obtain the Maryland records.  (Dkt. 11-3, Exhibit J.)  Although a Section 440.10(2)(a) ruling might not constitute a finding of procedural default that bars federal *habeas* review,[9] a Section 440.10(2)(c) ruling does, unless the petitioner can demonstrate "either cause and actual prejudice, or that he is actually innocent,"  *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008).  Petitioner has not claimed actual innocence.  However, he has asserted cause for his procedural default by arguing that his claim about trial counsel not presenting the Maryland records could not have been presented on direct appeal because he had not yet secured those documents, which he later obtained

---

[9] *See Silverstein v. Henderson*, 706 F.2d 361, 368 (2d Cir. 1983) (a Section 440.10(2)(a) ruling "does not constitute a finding of procedural default that would bar federal consideration of a [*habeas* petitioner's] claims").  *But see Jiang v. Larkin*, 12-cv-3869, 2016 WL 1718260, at *22 (S.D.N.Y. April 28, 2016) (stating that "[f]ederal courts disagree as to whether a New York state court's reliance on CPL § 440.10(2)(a) constitutes a procedural bar that precludes federal habeas review"); *Garner v. Superintendent of Upstate Correctional Facility*, 9:01-cv-0501, 2007 WL 2846907, at *20 (N.D.N.Y. Sept. 26, 2007) ("District courts within the Second Circuit disagree" on the issue).

via a FOIA request.  (Dkt. 12 at ECF 6.)  Petitioner has not elaborated upon these Maryland documents or explained why he did not request them earlier.

The Court declines to find procedural default as to this aspect of Petitioner's ineffective assistance claim for several reasons.  First, Respondent does not allege procedural default with respect to Petitioner's ineffective assistance claim.  Second, the Maryland-records issue is interwoven with the non-barred part of Petitioner's ineffectiveness claim, namely, the argument that trial counsel should have asserted a speedy trial violation.  Third, as noted above, Petitioner has alleged cause for his failure to raise the Maryland-records issue in state court.  Thus, the Court will address the merits of both aspects of Petitioner's ineffective assistance claim.

### III. DELAY OF PROSECUTION

A significant delay between indictment and arrest caused by government's negligence may violate a defendant's Sixth Amendment speedy trial right, even if the defendant cannot demonstrate exactly how the delay prejudiced him.  *Doggett v. United States*, 505 U.S. 647, 657–58 (1992).  A primary concern is that such delays hamper the defense, due to "dimming memories" and the "loss of exculpatory evidence."  *Id.* at 654.  In *Doggett*, the government violated the Speedy Trial Clause by waiting eight-and-a-half years between indicting the defendant and arresting him.  The delay was due almost solely to the government's own negligence: despite having information that the defendant was imprisoned in Panama, the government did not formally move to have him extradited to the United States.  *Doggett*, 505 U.S. at 649–50.

However, the Sixth Amendment right to a speedy trial does not apply to pre-indictment delay.  *United States v. Elsbery*, 602 F.2d 1054, 1058 (2d Cir. 1979) (citing *United States v. Marion*, 404 U.S. 307 (1971)).  A government investigation does not start the clock.  *Id.* at 1058–

59.  While an indictment in a different court arising out of the same transaction may trigger the Speedy Trial Clause, *id.*, Petitioner has not pointed to any authority—nor has the Court found any—for the proposition that an indictment in a different court for *unrelated* criminal activity can trigger a defendant's speedy trial right.

In addition to the Speedy Trial Clause of the Sixth Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments also provide protections against prosecutorial delay. *Elsbery*, 602 F.2d at 1059.  However, a defendant alleging a due process violation bears an especially "heavy burden" to show "unjustifiable Government conduct" resulting in "actual prejudice to the defendant's right to a fair trial." *Id.*  To violate the Due Process Clause, a delay must violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Lovasco*, 431 U.S. 783, 790 (1977).  Furthermore, the delay must be the result of "an intentional device [by the government] to gain a tactical advantage." *Denis v. Upstate Corr. Facility*, 361 F.3d 759, 760 (2d Cir. 2004); *see also United States v. Gouveia*, 467 U.S. 180, 192 (1984) (articulating the same standard).  The tactical advantage requirement is not met merely because a prosecutor "refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Lovasco*, 431 U.S. at 795.

For the prejudice requirement, due process analysis presumes that a defendant is not prejudiced when the indictment is brought within the applicable statute of limitations.  *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999).  Furthermore, "[w]ithout definite proof [of how the loss of evidence is prejudicial to him], no due process claim has been stated." *United States v. Birney*, 686 F.2d 102, 105–06 (2d Cir. 1982).  "The standard for demonstrating actual

prejudice is fairly stringent, as the dimming of memories with the passage of time, without more, does not create actual substantial prejudice to the right to a fair trial which would warrant dismissal of a case for pre-indictment delay." *Lloyd v. Artus*, 06-cv-3888, 2008 WL 892396, at *10 (S.D.N.Y. April 1, 2008) (internal quotations and alterations omitted).

The state court's decision rejecting Petitioner's speedy trial claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1). Petitioner cannot demonstrate a violation of his right to a speedy trial under the Sixth Amendment because that right does not apply to pre-indictment delay, which is the basis of Petitioner's claim. *Elsbery*, 602 F.2d at 1058. Though Petitioner was not indicted for the 1986 murder of Moore until 2002, once indicted, he was promptly arrested and prosecuted. His indictments in South Carolina and Maryland arose out of different criminal transactions, *i.e.*, drug-related activity and passport fraud, respectively, and so cannot be said to have triggered the speedy trial clock with respect to the Moore murder. *Elsbery*, 602 F.2d at 1058 (stating that speedy trial protections may be triggered by a previous state indictment "arising out of the same transaction"). Therefore, Petitioner cannot demonstrate that his Sixth Amendment speedy trial right was violated.[10]

Petitioner's claims also fail under the Due Process Clause. First, he has not alleged "unjustifiable government conduct" or "an intentional device [by the government] to gain a tactical

---

[10] Petitioner cites a series of state court decisions in support of his argument that pre-indictment delay can constitute a speedy trial violation. (Dkt. 12 at ECF 9–12, 36–38). However, on federal *habeas* review, the Court's task is to determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established *Federal* law…." 28 U.S.C. § 2254(d) (emphasis added). "The [New York] due process requirement of a prompt prosecution is broader than the right to a speedy trial guaranteed by … the Sixth Amendment ….[and] in some respects … is less rigid in its application than the right to due process recognized under the Federal Constitution," because it does not always require actual prejudice. *People v.*

advantage." *Elsbery*, 602 F.2d at 1059.  He merely alleges that because his arrest warrant and wanted card were active when he was arrested in South Carolina and Maryland, the authorities had "constructive knowledge of his whereabouts and refused to effectuate an arrest" and that because they failed to act on that constructive knowledge, they "did not act in good faith or with Due Diligence."  (Dkt. 12 at ECF 5.)  Even assuming *arguendo* that the wanted card would have alerted New York authorities to an arrest in another state,[11] this fact, at most, demonstrates negligence, not "an intentional device…to gain a tactical advantage."  Petitioner has not identified—nor can the Court reasonably conceive of—any tactical advantage the New York authorities would have gained by delaying his arrest.  *See United States v. Lai Ming Tanu*, 589 F.2d 82, 89 (2d Cir. 1978) (finding no intentional device to gain a tactical advantage, despite "an extraordinary lack of liaison between state and federal prosecutors", because there was "nothing sinister about the breakdown in communications"); *United States v. Oliver*, 683 F. Supp. 35, 41 (E.D.N.Y. 1988) (finding no due process violation even though the prosecution of the case was "anything but diligent").

Petitioner also fails sufficiently to allege prejudice.[12]  He offers no specific argument as to how an earlier prosecution would have been useful to his case, apart from suggesting that the

---

*Singer*, 376 N.E.2d 179, 186 (N.Y. 1978); *see People v. Vernace*, 756 N.E.2d 66, 67 (N.Y. 2001) (New York has "'never drawn a fine distinction between due process and speedy trial standards' when dealing with delays in prosecution" (quoting *Singer*, 376 N.E.2d at 186)).  Thus, the legal standards applied by New York courts are not applicable here.  The Court discusses the state speedy trial standard in relation to Petitioner's ineffective assistance claims, discussed in Part V, *infra*.

[11] Notably, the evidence at Petitioner's trial established that the cards only alerted authorities in New York City to the existence of the warrant for Petitioner's arrest.

[12] While the indictment was brought within the applicable statute of limitations, thereby triggering a presumption against prejudice, because there is no statute of limitations for second

16

memories of witnesses who testified against him may have "dimmed." At most, he argues that Brenda Brown's memories from the day of the shooting might have been impaired by the delay. However, in order to succeed, Petitioner must offer "definite and not speculative" details of how missing witnesses or facts specifically prejudiced the outcome of his case. *Birney*, 686 F.2d at 105–06; *see also United States v. Gotti*, S4-02-CR-743, 2004 WL 32858, at *4 (S.D.N.Y. Jan. 6, 2004) (finding that defendants had not met their "heavy burden" of establishing actual prejudice, because even though they were unable to call unavailable witnesses, they did not provide "any details as to how the witnesses would exculpate them"). It is also worth noting that Petitioner's trial did not hinge on eyewitness testimony alone. Petitioner was convicted of second-degree murder based, in large part, on written and oral statements *he* made to the arresting officer after waiving his *Miranda* rights. While not an outright confession, he admitted to being at the Club the night Moore was shot, and offered to "take 15 years for murder" after asking whether he would get life if convicted.

Petitioner's speedy trial claims therefore fail under both the Sixth Amendment and Due Process Clause.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner also claims that he received ineffective assistance of counsel because his trial counsel failed to: (1) secure evidence, *i.e.*, the Maryland records, showing that the government was

---

degree murder under New York law, the Court does not rely on this presumption in finding no prejudice. *See Cornielle*, 171 F.3d at 752 (presumption against prejudice where indictment obtained within applicable statute of limitations); N.Y. Crim. Proc. Law § 30.10(2)(a); N.Y. Penal Law § 125.25.

negligent in waiting 16 years to indict him for Moore's murder; and (2) assert a speedy trial claim based on the 16-year delay.

The Appellate Division appears to have addressed the second argument, namely, that his trial counsel was ineffective for not asserting a speedy trial violation. (Dkt. 11-3, Exhibit B.) The court dismissed this argument in a conclusory sentence, which this Court deems to be a decision on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Thus, to the extent relevant (*see supra* II(B)), the Appellate Division's rejection of Petitioner's ineffective assistance argument regarding the failure to raise a speedy trial claim deserves deference under 28 U.S.C. § 2254(d) ("AEDPA deference").

In denying Petitioner's Section 440 Motion, the Kings County Supreme Court found both of Petitioner's ineffective assistance arguments to be procedurally barred and did not address them on the merits. (Dkt. 11-3, Exhibit J.) Whether the Supreme Court's rejection of Petitioner's argument about his trial counsel not obtaining the Maryland records deserves AEDPA deference does not ultimately matter, because this aspect of Petitioner's ineffective assistance claim fails under any standard of review.

## A. Legal Standard

Under the test laid out in *Strickland v. Washington,* 466 U.S. 668 (1984), to prevail on a claim for ineffective assistance of counsel, a petitioner must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 694; *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying *Strickland* to claim for ineffective assistance of appellate counsel).

"The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001). *Strickland's* first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells,* 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard,* 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments." *Id.* (quoting *Strickland,* 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *DeLuca v. Lord,* 77 F.3d 578, 588 n.3 (2d Cir. 1996).

*Strickland's* second prong requires a petitioner to demonstrate prejudice, namely that there exists a "reasonable probability" that, but for the deficiency, "the result would have been different." *Id.* at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermine[s] confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Pavel v. Hollins,* 261 F.3d 210, 216 (2d Cir. 2001). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the

fact finder would have had a reasonable doubt respecting guilt." *Strickland,* 466 U.S. at 695; *Henry v. Poole,* 409 F.3d 48, 63–64 (2d Cir. 2005). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691.

### B. Petitioner's Trial Counsel was Not Ineffective for Failing to Raise a Speedy Trial Claim

With respect to Petitioner's argument that his trial counsel was ineffective for failing to *raise* the speedy trial violation, the Court applies the deferential standard of 28 U.S.C. § 2254(d)(1) because, as noted, the Appellate Division rejected this argument on direct appeal. *See People v. Velez*, 874 N.Y.S.2d 382, 383 (N.Y. App. Div. 2009); *Hawthorne v. Schneiderman*, 695 F.3d 192, 196 (2d Cir. 2012) (State court's "summary disposition constitutes a disposition 'on the merits'", thereby entitling the decision to AEDPA deference). The Court does not review the Appellate Division's rejection of Petitioner's *state* law ineffective assistance claim, because 28 U.S.C. § 2254(d)(1) does not authorize this Court to review a state court's merits determination of a state law claim. *See Howard*, 406 F.3d at 121 ("A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court."). Furthermore, to the extent that Petitioner argues that counsel's failure to obtain records that could have led to a successful speedy trial claim under *federal* speedy trial standards, this claim clearly fails because Petitioner's federal speedy trial claims are meritless, as discussed above.

Therefore the Court only addresses the question of whether the Appellate Division's determination, that the *federal Strickland* standard was not met by trial counsel's failure to advance

Petitioner's *state* law speedy trial rights, was "contrary to, or involved an unreasonable application of, clearly established Federal law."   The Court concludes that it was not.

To determine whether counsel could have made a successful speedy trial or prompt prosecution claim under state law, the Court must look to the five-factor test from *People v. Taranovich*, 335 N.E. 2d 303, 37 N.Y.2d 442, 445 (N.Y. 1975).  This test considers "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay."   *Id.* at 445; *see Bierenbaum v. Graham*, 607 F.3d 36, 51–52 (2d Cir. 2010) (applying five-factor test from *Taranovich* where state *habeas* petitioner alleged trial counsel ineffectiveness for failing to raise speedy trial claim based on pre-indictment delay).  A "determination made in good faith to defer commencement of the prosecution for further investigation *or for other sufficient* reasons, will not deprive the defendant of due process of law even though the delay may cause some prejudice to the defense."  *Singer*, 376 N.E.2d at 187 (emphasis added).

In this case, there were clearly "sufficient" reasons for the delay:  the police could not locate Petitioner because he fled the jurisdiction.  *See People v. Applewaite*, 192 A.D.2d 616, 617 (N.Y. App. Div. 1993) (rejecting speedy trial claim in part because "[m]uch of the delay was attributable to the defendant, and was not the result of dilatory tactics by the People"); *People v. Stone*, 136 A.D.2d 662, 663 (N.Y. App. Div. 1988) (rejecting speedy trial claim in part because defendant "engaged in conduct intended to evade the authorities, and his efforts were successful" and noting that "[a]ll but a small fraction of the delay [wa]s directly attributable to the defendant"); *People v. Henry*, 124 A.D.2d 820, 820 (N.Y. App. Div. 1986) (rejecting speedy trial claim in part because the delay "was caused by the defendant's evasion of the police, despite their good-faith

21

efforts to locate him").  Although Petitioner argues that his arrests on unrelated charges gave the New York authorities "constructive knowledge," such that their failure to find and indict him violated his rights, the Second Department has explicitly rejected such an argument.  *See Stone*, 136 A.D.2d at 663–64 (finding no speedy trial violation even though defendant had been "arrested on unrelated charges during his unauthorized absence from prison," and "the arresting authorities, for unknown reasons, did not learn of the warrant," because "[w]ithin the constraints of an overburdened and understaffed bureaucracy, diligent efforts were made to locate the defendant").

The fourth factor—"whether or not there has been an extended period of pretrial incarceration" (*Taranovich*, 37 N.Y.2d at 445)—is inapplicable here, since presumably it refers to the defendant's or petitioner's pretrial incarceration in the criminal prosecution in which the speedy trial claim could have been raised.  *See Bierenbaum*, 607 F.3d at 52 (finding no undue pre-indictment delay, in part, because habeas petitioner was not incarcerated in the criminal case where delay occurred); *see also People v. Townsend*, 270 A.D.2d 720, 720–21 (N.Y. App. Div. 2000) (treating lack of incarceration as a factor that weighs against a speedy trial violation).  There is no evidence that Petitioner was subjected to lengthy incarceration in connection with the prosecution at issue here.[13]  That Petitioner might have been incarcerated for long periods of time relating to

---

[13] Given Petitioner's immediate flight after the crime, this period would have been *after* Petitioner was located and returned to New York for prosecution.

*other* prosecutions in *other* states—as to which there also is no evidence—is irrelevant to Petitioner's speedy trial/ineffectiveness argument here.

Petitioner's inability to point to any actual prejudice caused by the delay, discussed *supra* at 16–17, further undermines his claim.[14] The Court has not found, and Petitioner has not identified, a New York case in which a speedy trial violation was found where the reason for the delay was a defendant's evasion of the authorities.[15]

Petitioner, therefore, did not have a strong argument that his state speedy trial rights were violated when his trial counsel chose not to advance that claim during Petitioner's criminal proceedings. It follows that his counsel's decision not to raise a speedy trial claim was not objectively unreasonable under the first prong of *Strickland*, and similarly, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Bierenbaum*, 607 F.3d at 51–52 (finding that state court was not unreasonable in finding no *Strickland* violation when petitioner faced 13-year delay prior to indictment, because "[a]lthough the delay was substantial, [petitioner] suffered no prejudice, and he was not incarcerated prior to trial," and concluding that "[g]iven the

---

[14] Although "a lengthy and unjustifiable delay in commencing the prosecution may require dismissal even though no actual prejudice to the defendant is shown," *People v. Singer*, 376 N.E.2d at 186, this delay *is* justifiable because it was caused by Petitioner himself.

[15] The nature of the underlying charge, although serious, did not appear to contribute to the delay, so this factor is neutral. *See People v. Watts*, 57 N.Y.2d 299, 303 (1982) ("Although the nature of the crime here was serious, that did not contribute to the delay.").

seriousness of the charge, the circumstantial nature of the evidence, and no evidence of any improper motive on the part of the prosecution, the motion had no chance of success").

It is even clearer, then, that the state court's decision denying Petitioner's ineffective assistance claim on direct appeal was neither contrary to, nor an unreasonable application of, clearly established Federal law.  *See* 28 U.S.C. § 2254(d)(1);  *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (stating that when federal courts evaluate ineffective assistance claims on *habeas* review, they must be "doubly deferential" to "afford both the state court and the defense attorney the benefit of the doubt").

### C.  Petitioner's Trial Counsel Was Not Ineffective for Not Obtaining the Maryland Records

In his amended *habeas* petition, Petitioner argues that his trial counsel was deficient because he failed to secure records from Maryland that could have proved that the New York authorities had "constructive knowledge" of Petitioner's 1988 arrest in Chersaw, South Carolina, thereby implicating his right to a speedy trial.  (Dkt. 12 at ECF 5.)

As discussed above, Petitioner did not have a meritorious state speedy trial claim, and therefore his counsel's decision not to advance an argument to that effect did not violate *Strickland*. Even assuming *arguendo* that the Maryland records would have given New York authorities "constructive knowledge" of Petitioner's whereabouts, Petitioner has not demonstrated how this "constructive knowledge" would have helped his speedy trial claim.  This argument appears to rely on the same premise of Petitioner's speedy trial argument that the Court has already rejected, namely, that the New York authorities had an obligation to locate Petitioner after he fled the jurisdiction.  Petitioner seems to be arguing that because the New York authorities might have

24

discovered Petitioner's whereabouts by searching other states' records, their failure to do so gives rise to a speedy trial claim. Thus, Petitioner's contention that his trial attorney was ineffective for not obtaining the Maryland records fails for the same reasons as his claim of ineffectiveness based on the failure to assert a speedy trial violation: by fleeing the jurisdiction, Petitioner undermined any speedy trial claim he might have had. Therefore, the Court finds that trial counsel's decision not to obtain the Maryland records was not objectively unreasonable under *Strickland*. Similarly, Petitioner has not demonstrated that he was prejudiced by the failure to obtain the Maryland records, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lynn v. Bliden*, 443 F.3d 238, 247 (2d Cir. 2006).

## CONCLUSION

For the foregoing reasons, Petitioner's application for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 is DENIED. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied

for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk

of the Court is directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: April 6, 2017
      Brooklyn, New York